UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THERESA J. CALDWELL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-11-2014 |
| | § | |
| THE UNIVERSITY OF HOUSTON SYSTEM, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Pending before the Court is the defendant's, University of Houston, motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry No. 28).[1]  Also pending is the defendant's motion for summary judgment (Docket Entry No. 32).  The plaintiff, Theresa J. Caldwell, filed a response to the motion for summary judgment (Docket Entry No. 50-1), to which the defendant replied (Docket Entry No. 54).  Lastly, the defendant filed objections and a motion to strike portions of the plaintiff's summary judgment evidence (Docket Entry No. 55), to which the plaintiff responded (Docket Entry No. 56).[2]  After having carefully reviewed the motions, the responses, the record and the applicable law, the Court finds completely in the defendant's favor.

---

[1] Earlier in this litigation, there were several other defendants, some of which were participants in the filings relevant to this Memorandum Opinion and Order.  However, for simplicity's sake, the Court will refer only to the defendant university, and to those portions of the filings that are still properly before the Court.

[2] Because the Court finds completely in the defendant's favor, it dismisses these objections and motion as moot.

## II.      Factual Background

This case concerns an employment discrimination dispute.  The plaintiff is an African American female of at least fifty-five years of age.  She began working for the defendant as an office assistant in 1983, and she remains employed there to date.   Throughout her employment with the defendant, the plaintiff has consistently received favorable employment evaluations, although she has been counseled multiple times to work on her interpersonal skills.   The defendant maintains official policies and procedures, which are listed in its Manual of Administrative Policies and Procedures and its System Administrative Memoranda.  The parties agree that those policies and procedures are fair and neutral on their face.

While employed by the defendant, the plaintiff has worked in the Admissions Office, the Planning & Budget Office, the Residential Life and Housing Office, and most recently the Provost Office.   She currently works as the Manager of Academic Fees in the Academic Budgets/Administration and Provost Central Business Office.  Edward Craig Ness, the Assistant Vice President of Academic Budgets and Administration, is her direct supervisor and has been for many years.

The plaintiff was denied funding from her department to attend two continuing education seminars in 2008 and in 2009.  During that time frame, the plaintiff's actual department did not provide funding for anyone to attend those seminars.  However, Paul Roch, a white male, was allowed to obtain a Master of Business Administration ("MBA") degree at the university's expense.

Also, the plaintiff applied, but was not hired, for four other positions with the defendant:

**(1)** In March 2009, she applied to be the Business Administrator in the College of Pharmacy.  Shaki Commissariat was hired instead, having already worked in the College of Pharmacy for two years as an accounting specialist.  Ness was the plaintiff's supervisor at this time.

(2) In March 2010, she applied to be the College Administrator in the College of Natural Sciences & Mathematics.  Joyce Collins was hired instead, and she is also an African American female over the age of forty.

(3) In April of 2010, she applied to be the Executive Director of Academic Budgets and Operations.  Dr. Sabrina Hassumani was hired instead, and has more education than the plaintiff.

(4) In January 2011, she applied to be the Executive Director in the College of Arts and Sciences.  Andrea Short was hired instead, having worked within that college for twelve years.

In December 2009, Ness eliminated the plaintiff's position of Academic Affairs Administrator and created two positions in its stead: Manager of Academic Fees and Administrator of the Provost Business Office.  Ness gave Caldwell the manager position and Maura Capper, a Caucasian female, the administrator position.

When the plaintiff worked in the Provost Business Office, the defendant implemented a university-wide overhaul of its job classification system.  Resultantly, the plaintiff's job assignment numerical pay grade was changed, along with forty-six other employees.  Her job duties and salary were unaffected by this change in classification.

On January 27, 2010, the plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission ("EEOC"), which she subsequently amended multiple times.  On January 7, 2011, the EEOC issued her a Notice of Right to Sue.  The plaintiff filed suit in this Court on May 27, 2011, which has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331.

## III.    Contentions of the Parties

### A.    The Plaintiff's Contentions

The plaintiff contends that she has been subjected to disparate treatment, disparate impact, discrimination in performance evaluations and in the terms and conditions of her

employment, and that she has been constructively demoted and passed over for promotions while other non-African American employees with similar qualifications have been promoted.  She asserts that she has been discriminated against based on race, color, national origin, gender and age.  She files claims under Title VII of the Civil Rights Act of 1964,[3] the Age Discrimination in Employment Act ("ADEA"),[4] and the Equal Pay Act.[5]  She maintains that her supervisors are afforded too much discretion and receive too little oversight when evaluating her.

### B.    The Defendant's Contentions

The defendant contends that the plaintiff has failed to establish a *prima facie* Title VII discrimination claim regarding her performance evaluations, alleged demotion, or denial of training opportunities because she cannot show that other similarly situated employees were treated more favorably under nearly identical circumstances.  The defendant claims that the plaintiff failed to establish a *prima facie* Title VII disparate impact claim because she has not articulated a facially neutral employment policy that adversely affects African American women, nor has she exhausted her administrative remedies on this claim.  The defendant avers that the plaintiff cannot establish the essential elements of her Equal Pay Act Claim because she cannot identify a male employee working in a position requiring equal skill under similar working conditions who is paid more.  Finally, the defendant maintains that her ADEA claim is barred by the Eleventh Amendment to the United States Constitution.

---

[3] 42 U.S.C. § 2000(e), *et seq.*

[4] 29 U.S.C. § 621, *et seq.*

[5] 29 U.S.C. § 206, *et seq.*

## IV.    Standards of Review

### A.    Rule 12(b)(1)

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3d Cir. 1992) (citing *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.")  Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims.  *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).  Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.")  In making its ruling, the Court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts

evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

### B.      Motion for Summary Judgment

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Little*, 37 F.3d at 1075 (internal

quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.      Analysis and Discussion

The Court finds completely in the defendant's favor. As explained in greater detail below, the plaintiff has essentially asserted a cornucopia of intertwined, conclusory claims

without basing those claims on sufficient concrete factual evidence.  In summary, the plaintiff's ADEA claim does not survive the defendant's motion to dismiss, and none of her remaining allegations survive the defendant's motion for summary judgment.

### A.    ADEA

The Court grants the defendant's motion to dismiss regarding the plaintiff's ADEA claim.  The defendant is a state agency, and the ADEA does not abrogate a state's sovereign immunity.  To the extent that the plaintiff brings an age discrimination claim, that claim is barred by the defendant's Eleventh Amendment immunity.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82-84 (2000); *Lowery v. University of Houston – Clear Lake*, 82 F. Supp. 2d 689, 692-93 (S.D. Tex. 2000); *Yowman v. Jefferson County Community Supervision & Corr. Dept.*, 370 F. Supp. 2d 568, 588 (E.D. Tex. 2005).  Accordingly, the Court grants the defendant's motion to dismiss this claim pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B.    Title VII Disparate Treatment

The Court grants the defendant's motion regarding the plaintiff's Title VII disparate treatment claim of discrimination.  Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . or national origin.

42 U.S.C. § 2000e-2(a)(1).  In employment discrimination cases such as the one *sub judice*, a plaintiff can prove Title VII discrimination "through direct or circumstantial evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

The plaintiff has offered no direct evidence[6] of the defendant's discriminatory intent.  In such cases, the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

Under the *McDonnell Douglas* burden-shifting framework:

[A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment.  If the employer sustains its burden . . . the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (internal quotations omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted).  "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Thus, "a plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race [or other descriptors protected by Title VII] was a determinative factor in the actions of which plaintiff complains."

---

[6] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

*Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996)).

The plaintiff bases her disparate treatment claim on her allegations that: (1) she received unsatisfactory employment evaluations; (2) she was denied training opportunities; (3) she was demoted; and (4) four other people were promoted to positions to which she applied. For the first three of those allegations, the plaintiff can neither establish her *prima facie* case nor show that the defendant's proffered reasons are pretextual. For the fourth allegation, the defendant has offered sufficient legitimate, nondiscriminatory reasons to justify its hiring decisions.

First, as to her evaluations, negative employment evaluations, even if undeserved, are not adverse employment actions. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 981 (E.D. Tex. 2004) (internal citations omitted). Regardless, the plaintiff did not actually receive negative evaluations. Between 2007 and 2010, she consistently "met expectations." Although counseled about her need to improve her communication skills, overall, her evaluations were satisfactory. Nor has she offered anything beyond speculation that the defendant's performance evaluation system is biased against African American women. At most, she has provided anecdotal evidence of other allegedly-dissatisfied African Americans. Such anecdotal evidence is inadmissible to show that the defendant has acted discriminatorily toward the plaintiff unless she demonstrates that the other alleged victims were similarly situated, which requires at least a showing that the other alleged victims were supervised by the same person, worked in the same department or area, and performed duties similar to the plaintiff. *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000).

Further, the plaintiff has not shown that any other similarly-situated male or non-African American received a more favorable performance evaluation based on the same quality of work.

*See Freeman v. Tex. Dept. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (internal citations omitted).   Moreover, she offers insufficient evidence of any racial comments or similarly-situated women or African Americans who received negative evaluations.   Such conclusory assertions amount to mere conjecture and speculation, which is not competent summary judgment evidence.  *Grimes*, 102 F.3d at 140 (citing, *inter alia*, *Little*, 37 F.3d at 1075).

Second, as to her lack of training opportunities, "a refusal to train is not an adverse employment action under Title VII."  *Hollimon v. Potter*, 365 Fed. Appx. 546, 549 (5th Cir. 2010) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999). Assuming, *arguendo*, that the plaintiff was able to establish a *prima facie* case based on her lack of training opportunities, the defendant has proffered legitimate, nondiscriminatory reasons for not funding the plaintiff's requested conference trips.   Specifically, no one else in her department was allowed to attend those particular training conferences due to alleged budget constraints. Yet, at a later date, the plaintiff's supervisor ultimately approved her funding request to attend a conference.

As for her contention concerning Paul Roch's MBA funding, he is not similarly situated to the plaintiff.  His source of funding came from a different budget and was earmarked for an unrelated educational program.  "[T]o establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances."  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F. 3d 597, 514 (2001) (internal quotations omitted).  Accordingly, this claim fails.

Third, to prove a *prima facie* case of discrimination based on her alleged demotion, the plaintiff must prove that she was: (1) demoted; (2) qualified for the position she occupied; (3) in a protected class at the time of the demotion; and (4) replaced by a person outside of that

protected class.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (internal citations omitted).  Here, the plaintiff has not shown that she was demoted.  While her Academic Affairs Administrator position was bifurcated into two separate positions, she received one of those positions, and she maintained the same salary and benefits.  She actually maintained a higher salary than the Caucasian female appointed to the second position.

Furthermore, even if she could establish a *prima facie* case based on demotion, she has offered only her subjective assessment of why her former position was divided into two positions.  On the other hand, the defendant has argued that its department would function better with two employees focusing on more discrete objectives.  Departmental needs are legitimate, nondiscriminatory reasons for restructuring and reorganizing job duties.  *Bell v. Bank of America*, 171 Fed. Appx. 442, 444 (5th Cir. 2006) (citing *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).  Additionally, the new pay grade structure, which changed her numerical job assignment grade, did not constitute a demotion because that numerical change did not affect her job duties or salary.

Fourth, the defendant does not dispute that the plaintiff has established her *prima facie* case for some of the four positions to which she applied, but it argues that it hired candidates that were better qualified than she.  An employer's decision to hire a better qualified individual is a legitimate reason for another applicant's denial.  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 721 n.2 (5th Cir. 2002) (internal citation omitted).

The four people hired instead of the plaintiff were: (1) Commissariat, an Asian man; (2) Collins, an African-American woman; (3) Dr. Hassumani, an Asian woman; and (4) Short, a Caucasian woman.  Commissariat had worked for two years directly in the same department that ultimately hired him, unlike the plaintiff.  Collins is also an African American female with more

experience than the plaintiff working with research grants and contracts. Dr. Hassumani was better educated than the plaintiff, whose terminal degree was a bachelor's degree. Lastly, Short had worked for twelve years in a relevant capacity in the same department that ultimately hired her. Further, "it is not the court's place to second-guess management's business decisions or to serve as a self-appointed, corporate personnel manager." *Patton v. United Parcel Serv.*, 910 F. Supp. 1250, 1267 (S.D. Tex. 1995) (citing *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1165 (5th Cir. 1993)). Thus, the plaintiff's disparate treatment claims fail.

### C.     Title VII Disparate Impact

The Court grants the defendant's motion regarding the plaintiff's disparate impact claim because she has failed to allege sufficient facts to show how a facially neutral employment policy disadvantages African American women. To establish a disparate impact claim, a plaintiff must show employment practices that are based upon facially neutral criteria, but that in fact fall more heavily on one group and cannot be justified by business necessity. In this circumstance, no proof of discriminatory motive is necessary. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 349 (1977) (internal citations omitted). Nevertheless, a plaintiff must demonstrate that it is the application of a specific employment practice that has created the disparate impact. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) (overruled on other grounds).

Even if the plaintiff had exhausted her administrative remedies – which is contested – she has not identified a facially neutral employment practice that arguably disproportionately impacts African Americans, nor has she offered statistical evidence showing that said practice has resulted in prohibited discrimination. *See Collins-Pearcy v. Mediterranean Shipping Co. (USA)*, 698 F. Supp. 2d 730, 745 (S.D. Tex. 2010) (internal citation omitted). A complaint about

an employer's practices with respect to "hiring, salary, promotions, and terms and conditions of employment" is not a complaint about a facially neutral employment policy at all; rather, it is a "general attack on management." *Collins-Pearcy*, 698 F. Supp. 2d at 745. Thus, "a disparate impact . . . action is not the proper mechanism from which to attach the cumulative effect of an employer's practices." *Munoz v. Orr*, 200 F.3d 291, 304 (5th Cir. 2000) (internal citations omitted).

Although the plaintiff generally impugns the University's policies and procedures, she does not challenge any specific policy or procedure. Nor has she provided the Court with sufficient statistics indicating a causal relationship between a challenged policy and its alleged discriminatory effect. Thus, the Court grants the defendant's motion for summary judgment on this issue.

### D.   Equal Pay Act

The Court grants the defendant's motion regarding the plaintiff's Equal Pay Act claim. To establish such a violation, a plaintiff must show that: (1) the employer is subject to the Act; (2) the plaintiff performed work in a position requiring skill, effort and responsibility equal to that of a co-worker of the opposite sex, under similar working conditions; and (3) the plaintiff was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 1553 (5th Cir. 1993). This "necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Galvan v. Caviness Packing Co., Inc.*, 546 F. Supp. 2d 371, 380 (N.D. Tex. 2008) (internal quotation omitted).

The plaintiff mentions, for example, Paul Roch as a similarly situated male coworker, but she has offered insufficient evidence that they are indeed similarly situated. There is no evidence

in the record that anyone, including Roch, performed the same duties as the plaintiff.  Prior to when the plaintiff transitioned from Academic Affairs Administrator to Manager of Academic Fees, Roch was earning less money as the plaintiff's subordinate.  After the restructuring, their duties still differed.  Nor has the plaintiff offered sufficient evidence of compensation disparities between her and any other coworker with whom she was/is similarly situated.  Thus, the Court grants the defendant's motion on this issue.

## VI.    Conclusion

Based on the foregoing discussion, the Court GRANTS the defendant's motion to dismiss the plaintiff's ADEA claim and otherwise GRANTS the defendant's motion for summary judgment.

It is so **ORDERED**.

SIGNED at Houston, Texas this 16th day of July, 2012.

_____
Kenneth M. Hoyt
United States District Judge